410 So.2d 524 (1982)
The WOOSTER SCHOOL CORPORATION, the Easter Seal Society for Crippled Children and Adults of Broward County, Inc., and the Easter Seal Society for Crippled Children and Adults of Florida, Inc., Appellants,
v.
George HAMMERER, Joseph S. Grover, et al., Appellees.
No. 80-401.
District Court of Appeal of Florida, Fourth District.
January 13, 1982.
Rehearing Denied March 19, 1982.
*525 Robert A. Ware of English, McCaughan & O'Bryan, Fort Lauderdale, for appellant Easter Seal Societies.
Thomas A. Groendyke of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellant The Wooster School.
Richard A. Barnett of Krupnick & Campbell, P.A., Fort Lauderdale, for appellee Hammerer.
John R. Hargrove of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellee Century National Bank of Broward.
DOWNEY, Judge.
Appellants are charitable beneficiaries of a pour over trust created by Adele G. Senior. They have perfected this appeal from an amended judgment finding that appellee George William Hammerer was entitled to one-third of one-eighth of the remaining assets of the trust.
The evidence reflects that Adele G. Senior created a trust with the Century National Bank of Broward as trustee, in which, among other things, she directed the trustee upon the event of her death to distribute one-eighth of the remaining trust property to appellee, George William Hammerer, and his two daughters,[1] "provided, however, that the said George William Hammerer be employed by Grantor at the time of Grantor's death, and if he is not this devise and bequest to him and his daughters shall lapse." Adele Senior died April 25, 1977. However, on April 8, 1976, Hammerer received a letter from Adele's nephew, Joseph S. Grover, which advised Hammerer that Grover and his mother (Adele's sister) had concluded that, as a result of existing circumstances, Hammerer should anticipate terminating his employment by June 1, 1976. A copy of that letter was sent by Grover and received by the trustee bank. Upon receipt of a copy of the letter, the trustee concluded Hammerer's employment had been terminated effective June 1, 1976, and prepared severance pay checks for him effective that date. Pursuant to said letter and the unpleasant treatment he subsequently received at the hands of Adele's sister, Hammerer left the employ of Adele Senior without discussing it with Adele, who by then was suffering from the effects of a stroke.
In September, 1976, Hammerer filed a multi-count complaint against Joseph S. Grover, William M. Grover III, and Lilly Grover for damages for conspiring to procure *526 his discharge. The complaint was subsequently amended after Adele's death so that the above named defendants were all dropped and the trustee was added. At the time of trial there was but one count remaining, which sought to recover Hammerer's interest in the trust from the trustee.
During the course of the trial Hammerer offered the letter from Grover into evidence. The court apparently accepted the letter into evidence for the limited purpose of showing it had been received by Hammerer. However, the record clearly shows that both Hammerer and the trustee regarded the letter as a notice of discharge. Because of this letter the trial court allowed evidence to be adduced to show Adele's true intent in making the gift to Hammerer. Based thereon, the trial court found she intended the gift to vest even under the circumstances of this case.
The main question presented is whether a legatee or devisee should be held responsible for the consequences of a failure to perform a condition of a legacy or devise, which failure results from impossibility of performance. We know that generally speaking, where a testamentary gift is subject to a valid condition, performance thereof is required. In Re Estate of Bateman, 290 So.2d 528 (Fla. 3rd DCA 1974). In some instances the courts have held that impossibility of performance will not excuse failure of a devisee to comply with a condition in a will. In Re Estate of Bateman, supra; Guilliams v. First National Bank of Leesburg, 229 So.2d 633 (Fla. 2d DCA 1970). However, in the case of In Re Mollard's Estate, 98 So.2d 814 (Fla. 1st DCA 1957), the First District Court of Appeal provided a logical exception to the general rule in holding that when the condition of a legacy was impossible of performance because of the volitional act of a third party who stood to gain by that act, performance was not required. In the Mollard case the testatrix executed a will designating her husband as the residuary legatee and bequeathing $5,000 to her nurse on condition that the nurse was in her employ at the time of her death. The husband was familiar with the will and fired the nurse approximately twenty days before his wife died. As executor, the husband refused to recognize the nurse's legacy because the nurse was not in the testatrix's employ when she died. The First District Court of Appeal reversed the trial court's finding that the condition of the bequest had not been fulfilled, holding that the husband had no authority to discharge the nurse and that:
It would be unconscionable and totally without honorable precedent to permit a residuary legatee to become enriched by his arbitrary act of discharging the legatee without rhyme or reason, so far as appears by the record before us, and to thus produce the fiction that the legacy failed because it was a condition thereof that the legatee be in testator's employ at the time of her death. 98 So.2d at 816.
If the courts of this state are to align themselves with the line of cases holding that nonperformance of a condition precedent cannot be excused where performance was precluded by a third party, unless the third party stands to gain as a result of nonperformance of the condition, then the judgment under review is erroneous. There are several cases which appear at first blush to take such an adamant position. However, we would distinguish them in the following fashion. In Re Estate of Bateman, supra, did not involve the volitional act of a third person that made performance impossible. The other case, Guilliams, supra, involved a failure of the devisees to perform the conditions which were to manage a citrus grove and ferneries, and to pay all taxes, utilities, fire insurance premiums, and repairs on the improvement in question. The devisees did not make the required payments, and the court held the devise lapsed. In passing, the court noted that the devisees' financial inability to fulfill the conditions precedent did not relieve them of the duty to perform. Once again, there was no intervention by a third party; and one cannot tell from the opinion whether the Guilliams court considered whether the testatrix intended the devise to vest in all events or only if the conditions were performed.
*527 We agree with the holding in the Mollard decision based upon its facts. However, we would not limit the spirit of that decision to its facts. Certainly, a third party who prevents performance of a condition precedent should not be allowed to rely on nonperformance where that party (as in Mollard) stands to gain by preventing the performance; but we do not believe that excusing nonperformance should be restricted to cases in which the third party preventing performance is one who stands to gain by his act. There is respectable authority for a less restrictive exception which would excuse nonperformance caused by a third party whether the third party stands to gain thereby or not. See Annot.: Will  Condition  Impossibility, 39 A.L.R.2d 522, § 7[a].
Of course, a testator can attach conditions to the vesting of a gift. The general rule is that where a testamentary gift is made subject to a valid condition precedent strict performance of the condition is required. But where it becomes impossible for the condition to be performed without the fault of the donee, performance should be excused unless it be determined that performance of the condition was the controlling motive for the testator's making of the bequest. See Annot., supra, §§ 13-14. The determining inquiry should be whether the testator's intent in making a bequest was to benefit the donee or to obtain strict performance of some important act in any and all events, with the donee being paid, by way of the bequest, for performing the act. As the court noted in In Re Bridge's Estate, 41 Wash.2d 916, 253 P.2d 394, 402, 39 A.L.R.2d 506 (1953):
"`There is obvious justice in not holding the devisee or legatee responsible for the consequences of a breach of or failure to perform, a condition, where such breach or failure is not due to fault on his part, and where it is clear that such a contingency was not within the testator's contemplation. And at bottom the question always is whether it was the testator's intention that an involuntary breach of condition should operate to defeat the gift. * * *'"
The Restatement of Property, § 438, discusses the effect of impossibility of performance and the necessity in that circumstance of determining the intent of the donor. In subsection "d" of the Comment at pp. 2551-2552 it is stated:
"Generally an inference that the testator intended to excuse from performance is not justified where the impossibility arises out of a volitional act of the devisee. Where a volitional act of some third person, or a non-volitional occurrence, or a circumstance external to the person who is to perform, results in impossibility, this fact frequently tends to an inference that non-performance is excused."
Also in subsection "f" of the Comment at p. 2553 we find it said:
"If the source of the impossibility lies in circumstances beyond control of the devisee, that fact tends to an inference that nonperformance is excused."
The trial judge found that the condition in this case was not performed because of the unforeseen intervention of the nephew, Joseph Grover, in discharging Hammerer.
In our view the trial judge was eminently correct in his conclusion and the justice of the cause compels that result. Hammerer had worked for Adele for some seven years, caring for her every need. As a result, she had showered many gifts upon Hammerer and his family. She had given him money, educated his children, and helped him purchase a home, among other things. She apparently had no relatives who were as close to her as Hammerer. Although she remembered Joseph Grover in her will, she excluded both her sister and Joseph's brother. Joseph's deposition shows that he did not see a great deal of his aunt. Thus, the implicit finding of the court that Adele intended the gift to vest even if the condition precedent was not performed through no fault of Hammerer is supported by the record.
Appellants contend in their brief that the Joseph Grover letter was not a notice of discharge and that, in any event, Joseph did not have the authority to discharge Hammerer, *528 and therefore Hammerer left of his own volition. We would concede these positions are arguable. However, as indicated above, both Hammerer and the trustee thought the letter terminated Hammerer's employment with Adele and, as a result, he left that employment. Also, because Hammerer was only Adele's employee and Joseph Grover was Adele's close relative, an assistant headmaster of a school in the east, and (as he put it in his deposition) the senior male member of the family, Hammerer and the trustee assumed Joseph had the authority to terminate Hammerer's employment. Whether Joseph technically had the legal authority to do so is not determinative of the question; Hammerer, the recipient of the letter, in good faith thought Grover had the authority and that is why he was not in Adele's employment when she died. The letter was the proximate cause of Hammerer's leaving Adele's employment. Therefore we believe this record not only supports a holding that performance of the condition was excused but requires it.
In view of the foregoing, the amended judgment appealed from is affirmed.
BERANEK, J., and RUTTER, WILLIAM, Associate Judge, concur.
NOTES
[1] The two daughters were not parties to this suit, thus the judgment on appeal adjudicated only George William Hammerer's interest in the trust.